# EXHIBIT 1

# Pepper Hamilton LLP
### Attorneys at Law

3000 Two Logan Square
Eighteenth and Arch Streets
Philadelphia, PA 19103-2799
215.981.4000
Fax 215.981.4750

**PRIVILEGED AND CONFIDENTIAL**

Michael H. Reed
direct dial: 215-981-4416
reedm@pepperlaw.com

September 2, 2009

*VIA FEDERAL EXPRESS AND E-MAIL*

Kerry E. Notestine, Esquire
Littler Mendelson, P.C.
1301 McKinney Street
Suite 1900
Houston, TX 77010

      *Re:*   *Robert E. Evans, et al. v. Sterling Chemicals, Inc., et al.,*
           *C.A. No. H-07-625 (U.S.D.C., S.D. Tex., Houston Div.*

Dear Kerry:

      This supplemental report and the opinions contained herein ("Supplemental Report") is being offered pursuant to Fed. R. Civ. P. 26(a)(2)(B) to supplement my Initial Report dated March 10, 2008 ("Initial Report").[1] I reserve the right to further supplement or modify my opinions should additional information become available.

## I.    **INTRODUCTION**

      This Supplemental Report analyzes and responds to the issues raised in the supplemental report submitted by Catherine Steege, Esquire in this matter on August 7, 2009.

## II.    **QUALIFICATIONS AND EXPERIENCE; COMPENSATION**

      My compensation and qualifications remain unchanged from that disclosed in the Initial Report except as follows:  Subsequent to submitting the Initial Report, I was admitted to the bar of the United States Court of Appeals for the Sixth Circuit.

---

[1] Defined terms used in my Initial Report shall have the same meaning in this Supplemental Report.

**Pepper Hamilton LLP**
Attorneys at Law

Kerry E. Notestine, Esquire
Page 2
September 2, 2009

## III.    DOCUMENTS REVIEWED

In performing my analysis, I reviewed and relied upon the same documents, pleadings and correspondence that I reviewed and relied upon in preparing the Initial Report, including the documents listed in Appendix "B" attached to the Initial Report. I also reviewed and analyzed the supplemental report submitted by Catherine Steege, Esquire on August 7, 2009.

## IV.    FACTUAL BASIS FOR OPINION

This Supplemental Report is based upon the factual background set forth in the Initial Report. I refer specifically to the Asset Purchase Agreement dated December 23, 1996 referenced in the Initial Report (the "APA"). I note that § 8.02(c) of the APA provides as follows:

> (c) The Cytec Parties acknowledge and agree that their sole and exclusive remedy with respect to any and all claims relating to any breach of any representation or warranty or, except as otherwise specifically provided herein, any failure to perform any covenant (exclusive of indemnification obligations), contained in this Agreement, the Assumption Agreement or the General Conveyance Transfer and Assignment, shall be pursuant to the indemnification provisions set forth in this Agreement.

## V.    OVERVIEW OF THE APPLICABLE LAW

In addition to the authorities cited and discussed in the Initial Report and the cases cited and referred to in Ms. Steege's supplemental report, I reviewed the section of the Employee Retirement Income Security Act of 1974, 28 U.S.C. § 1001 *et seq.* ("ERISA"), that defines "employee welfare benefit plan." That section provides as follows:

> § 1002. Definitions
>
> For purposes of this subchapter.
>
> (1) The terms "employee welfare benefit plan" and "welfare plan" mean any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the

**Pepper Hamilton LLP**
Attorneys at Law

Kerry E. Notestine, Esquire
Page 3
September 2, 2009

>    purchase of insurance or otherwise, (A) medical, surgical, or
>    hospital care or benefits, or benefits in the event of sickness,
>    accident, disability, death or unemployment, or vacation benefits,
>    apprenticeship or other training programs, or day care centers,
>    scholarship funds, or prepaid legal services, or (B) any benefit
>    described in section 186(c) of this title (other than pensions on
>    retirement or death, and insurance to provide such pensions).

29 U.S.C. § 1002(1).

I also reviewed *Donovan v. Dillingham*, 688 F.2d 1367 (11th Cir. 1982), the leading precedent interpreting the requirements for an ERISA-qualified plan. In *Dillingham*, the Eleventh Circuit held that, at a minimum, in order to fall with the ERISA definition of "employee welfare benefit plan," a "plan, fund, or program" requires (i) the existence of intended benefits, (ii) intended beneficiaries, (iii) a source of financing and (iv) a procedure to apply for and collect benefits. 688 F.2d at 1373-76. I also considered certain cases not cited by Ms. Steege in her supplemental report that interpret the meaning of "plan, fund, or program maintained or established" under § 1114(a) of the Bankruptcy Code, as well as the other cases cited herein.

Notwithstanding my review and consideration of the foregoing ERISA provision and ERISA case law, you have authorized me to assume, as did Ms. Steege in her supplemental report, that § 5.05(f) of the APA, standing alone, does not qualify as "plan, fund, or program" that satisfies the definition of "employee welfare benefit plan" under ERISA.

VI.   **QUESTIONS PRESENTED**

This Supplemental Report addresses the following questions:

**Pepper Hamilton LLP**
_____ Attorneys at Law

Kerry E. Notestine, Esquire
Page 4
September 2, 2009

A.    Does § 5.05(f) of the APA, standing alone, constitute a "retiree benefit" within the meaning of § 1114 of the Bankruptcy Code?

B.    If, as Ms. Steege hypothesizes, the Sterling Chemicals Employee Benefits Plans Committee (the "Employee Benefits Committee") had hired additional "independent counsel, with expertise in bankruptcy law and in particular with expertise in § 1114 of the Bankruptcy Code and § 1114 case law," what advice would such counsel have given to the Employee Benefits Committee regarding Sterling Chemicals' increase of Plaintiffs' premiums under the Retiree Medical Plan? Specifically, would such counsel have advised that the premium increase was improper and unauthorized for the reasons stated by Ms. Steege?

VII.    **OPINION**

A.    **General**

After reviewing and analyzing the relevant documents and testimony and the other relevant portions of the record and considering the applicable authorities, it is my opinion to a reasonable degree of professional certainty that:

1.    Section 5.05(f) of the APA, standing alone, does not constitute a "retiree benefit" within the meaning of § 1114 of the Bankruptcy Code. Accordingly, Sterling Chemicals was not required to comply with the provisions of § 5.05(f) of the APA, or any other provisions of the APA, following the rejection of the APA under § 365 of the Bankruptcy Code.

2.    Independent bankruptcy counsel would have provided analysis and advice consistent with the analysis and advice set forth in my Initial Report and in this Supplemental Report. Accordingly, independent counsel would not have advised the Employee Benefits Committee to object to the imposition of the premium increases imposed by Sterling Chemicals on the Plaintiffs after the bankruptcy.

B.    **Further Opinions and Discussion**

1.    Section 5.05(f) of the APA

a.    Section 5.05(f) of the APA, standing alone, is not a "retiree benefit" within the meaning of § 1114 of the Bankruptcy Code.

In her supplemental report, Ms. Steege contends that, assuming that § 5.05(f) of the APA did not amend the Retiree Medical Plan, § 5.05(f) of the APA, standing alone, constitutes a "retiree benefit" under § 1114 of the Bankruptcy Code, and, accordingly, Sterling

Pepper Hamilton LLP
~~~~~~~~~~~~~~~~ Attorneys at Law

Kerry E. Notestine, Esquire
Page 5
September 2, 2009

Chemicals was required to comply with § 1114 of the Bankruptcy Code in order to reject
§ 5.05(a) of the APA. Because Sterling Chemicals did not utilize § 1114 to reject the APA, the
argument goes, § 5.05(f) survived the rejection of the APA and precluded Sterling Chemicals
from increasing the Plaintiffs' premiums without Cytec's prior written consent.

   One initial problem with this argument is that, as Ms. Steege expressly
acknowledges in her supplemental report, the indemnification provisions of the APA (including
§ 8.02(c) of the APA quoted above) *were rejected.* This is significant because, based upon the
plain meaning of § 8.02(c) of the APA, the "sole and exclusive remedy" available to the Cytec
Parties (or the Plaintiffs as their third-party beneficiaries) for any breach of the APA was
enforcement of the indemnification provisions. Since Sterling Chemicals' obligation to comply
with the indemnification provisions was rejected, the Plaintiffs have no recourse against Sterling
Chemicals for any breach of § 5.05(f) of the APA even if that provision survived the rejection of
the APA under § 365 of the Bankruptcy Code by reason of Sterling Chemicals' failure to comply
with § 1114 of the Code.

   b.  It is well settled that, whenever possible, federal courts are
required to interpret statutes in accordance with their plain language and meaning without
referring to legislative history or other extrinsic evidence. *Lamie v. U.S. Trustee,* 540 U.S. 526,
534-39, 124 S. Ct. 1023, 1030-32, 157 L.Ed.2d 1024 (2004); *Patterson v. Shumate,* 504 U.S.
753, 757-59, 112 S. Ct. 2242, 2246-47, 119 L.Ed.2d 519 (1992); *United States v. Ron Pair
Enterprises, Inc.,* 489 U.S. 235, 242, 109 S. Ct. 1026, 1031, 103 L. Ed. 2d 290 (1989). The plain
meaning of § 1114(a) of the Bankruptcy Code compels the conclusion that § 5.05(f) of the APA
does not constitute a "retiree benefit" because § 5.05(f) does not contain or create rights under
any "plan, fund, or program maintained or established" *by the Debtors.*

   Section 5.05(f) of the APA, on its face, does not constitute a "plan, fund, or
program maintained or established" *by the Debtors.* Section 5.05(f) does *refer* to benefit plans.
But the benefit plans referenced in § 5.05(f) were established and maintained by the *Cytec
Parties. See* Schedule 4.01(s) to the APA, to which §5.05(f) refers. Section 5.05(f) does not
refer to or incorporate any "plan, fund, or program maintained or established" *by the Debtors.*

   These facts distinguish the present case from the cases cited by Ms. Steege in her
supplemental report, i.e., *In re Wapakoneta Machine Co.,* 2008 WL 202367 (Bankr.N.D.Ohio,
Jan. 22, 2008); *In re General Datacomm Indus., Inc.,* 407 F.3d 616 (3d Cir. 2005); and *In re
Horizon Natural Resources Co.,* 316 B.R. 268 (Bankr. E.D. Ky. 2004). In *Wapakoneta,* the
debtor and a retiree were parties to a stock purchase agreement. The issue presented was
whether a provision in the stock purchase agreement under which health benefits were to be
provided by the debtor to the retiree during his retirement constituted a "plan, fund, or program"
under § 1114(a). The stock purchase agreement expressly entitled the retiree to "the benefits

**Pepper Hamilton LLP**
Attorneys at Law

Kerry E. Notestine, Esquire
Page 6
September 2, 2009

afforded a retiree under the company health insurance program." The agreement also provided that the retiree's coverage under the "retiree health insurance plan shall not be reduced below that coverage in effect on the date of [the agreement]." 2008 WL 202367 at *1. In contrast to the present case, in *Wapakoneta*, there was clearly a "plan, fund, or program maintained and established" by the debtor.

In *General Datacomm*, the dispute involved various employees who, on the verge of retirement, were terminated without cause by the debtor in order to deprive them of the opportunity to participate in various retiree benefits. The debtor argued that § 1114 did not cover the claimants because, at the time of their dismissal, they were not "retired employees." The Third Circuit rejected this argument holding that "deliberate and involuntary termination of an employee on the verge of retirement, where the employee has otherwise met all qualifications for retirement, cannot deprive such employee from the procedural protections of § 1114." 407 F.3d at 624. Once again, *General Datacomm*, unlike the present case, involved a "plan, fund, or program maintained and established" by the debtor.

In *Horizon Natural Resources*, the court considered whether retiree benefits under the Coal Industry Retiree Health Benefit Act of 1992, 26 U.S.C. §§ 9701-22 (the "Coal Act") constituted "retiree benefits" under § 1114 of the Code. Certain parties had argued that the term "retiree benefits" included only benefits received pursuant to a contract and did not apply to statutory benefits. The court rejected that argument noting, inter alia, that § 1114(a) makes no distinction between contractual and non-contractual benefits. 316 B.R. at 275. *But see In re Westmoreland Coal Company*, 213 B.R. 1, 17-20 (Bankr. D. Colo. 1997) (benefits paid by insurer to retirees pursuant to Coal Act after prepetition termination of debtor's self-funded plan were not "retiree benefits" under § 1114(a)). The court in *Horizon Natural Resources* also found § 1114 applicable because "even if the plan, fund, or program was 'established' by statute, it is 'maintained' by the debtors." *Id.*, at 276. Once again, *Horizon Natural Resources,* unlike the present case, involved a "plan, fund, or program maintained" by the debtors.

In summary, in contrast to the facts involved in *Wapakoneta, General Datacomm* and *Horizon Natural Resources*, § 5.05(f) of the APA did not comprise a "plan, fund, or program maintained or established" by the Debtors and none of the benefit plans referred to in § 5.05(f) of the APA was a "plan, fund, or program maintained or established" by the Debtors.

Accordingly, based upon the plain meaning of § 1114(a) of the Bankruptcy Code, § 5.05(f) of the APA does not constitute a "retiree benefit" because it does not constitute or incorporate a "plan, fund, or program maintained or established" by the Debtors. Therefore, the Debtors were not required to file a motion under § 1114 of the Code in order to reject the Debtors' future performance obligations under § 5.05(f) of the APA.

**Pepper Hamilton LLP**
Attorneys at Law

Kerry E. Notestine, Esquire
Page 7
September 2, 2009

    c.  As Ms. Steege noted, the phrase "plan, fund, or program" in
§ 1114(a) does not specifically incorporate the definition of "employee welfare benefit plan" in
ERISA. Compare 11 U.S.C. § 1114(a) with 29 U.S.C. § 1002(1). In *Howard Delivery Services,
Inc. v. Zurich American Insurance Co.*, 547 U.S. 651 (2006), the United States Supreme Court
held that the phrase "employee benefit plan" found in § 507(a)(5) of the Bankruptcy Code did
not have the same meaning as the term "employee welfare benefit plan" found in ERISA. While
the Supreme Court in *Howard* held that the ERISA definition would not be incorporated into
§ 507 of the Bankruptcy Code, the Court *did not* hold that it was inappropriate for courts
construing other provisions of the Bankruptcy Code to consult ERISA when the Bankruptcy
Code used a term that was not defined in the Code but was defined in ERISA. The courts other
than the bankruptcy court in *Wapakoneta* that have specifically addressed the meaning of "plan,
fund, or program" in § 1114(a) have consulted and relied upon the ERISA definition. *See In re
Exide Technologies*, 378 B.R. 762, 768-69 (Bankr. D. Del. 2007); *In re Certified Air
Technologies, Inc.*, 300 B.R. 355, 370-372 (Bankr. C.D. Cal. 2003); *In re New York Trap Rock
Corp.*, 126 B.R. 19, 22-24 (Bankr. S.D.N.Y. 1991); *In re A.C.E. Elevator Co., Inc.*, 347 B.R.
473, 486 (Bankr. S.D.N.Y. 2006). These cases were not overruled by *Howard*. Ms. Steege does
not cite any of the foregoing decisions even though *Exide Technologies* and *A.C.E. Elevator*
were both decided after *Howard.*

    d.  In addition, Ms. Steege failed to note that the ultimate holding of
the Supreme Court in *Howard* was that "employee benefit plan" should be given a *narrower*
construction under the Bankruptcy Code than the phrase is given under ERISA. As a result, the
court found that the phrase excluded workers' compensation benefits. The court reached this
result by applying the following principle of statutory construction: ". . . we are guided in
reaching our decision by the equal distribution objective underlying the Bankruptcy Code, and
the corollary principle that provisions allowing preferences must be tightly construed." 547 U.S.
at 667 (citations omitted). The principle of statutory construction which guided the Supreme
Court in *Howard* applies with equal force here. The inclusion of contractual rights or
entitlements within the scope of § 1114(a) has the effect of granting those interests a
"preference" over general unsecured claims. Under the logic of *Howard*, § 1114(a) should be
construed narrowly to exclude any rights purportedly created by § 5.05(f) in favor of the
Plaintiffs.

    e.  Assuming, arguendo, that § 5.05(f) of the APA constituted a
"retiree benefit" within mean of § 1114 of the Code, Sterling Chemicals did not violate § 1114
by increasing the Plaintiffs' premiums after the effective date of the Plan of Reorganization for
the following reasons:

      (i)  Section 1114 does not preclude a debtor employer from
modifying or terminating a retiree benefit plan if the benefit plan explicitly reserves the

**Pepper Hamilton LLP**
Attorneys at Law

Kerry E. Notestine, Esquire
Page 8
September 2, 2009

employer's right to amend, modify or terminate the plan. *See In re Chateaugay Corp.*, 945 F.2d 1205, 1206-11 (2d Cir. 1991), *cert denied*, 502 U.S. 1093 (1992) (§ 1114 of the Code did not require debtor to continue providing health benefits to retirees after the expiration of the term of the agreement pursuant to which the benefits were paid even though the agreement expired during the Chapter 11 case); *Retired Western Union Emples. Ass'n v. New Valley Corp. (In re New Valley Corp.), 1993 U.S. Dist. LEXIS 21420*, D.N.J., Jan. *1993*)(where summary plan descriptions and annual summaries of material modifications of retirees medical plan contained specific reservation by the debtor of the right, within its sole discretion, to amend or terminate all or any part of the benefits, the debtor was not required to comply with § 1114 of the Code in order to modify or terminate the retirees' benefits); *In re Delphi Corp., 2009 WL 637315 *6* (Bankr. S.D.N.Y., March 10, 2009) ("…if, in fact, the debtors have the unilateral right to modify a health or welfare plan, that modifiable plan is the plan that is to be maintained under Section 1114(e), with the debtors' pre-bankruptcy rights not being abrogated by the requirements of Section 1114"); *In re Doskocil Cos.*, 130 B.R. 870, 876 (Bankr. D. Kan. 1991) (§ 1114 did not prohibit the exercise of a contractual right to terminate or modify retiree benefits where such rights existed prior to bankruptcy); *In re North American Royalties, Inc.*, 276 B.R. 860, 866-68 (Bankr. E.D. Tenn 2002) (termination of agreement to provide retiree benefits in accordance with employer's unilateral right to do so did not constitute a "modification" requiring compliance with § 1114); *In re Ames Dept. Stores, Inc.*, 76 F.3d 66, 71-2 (2d Cir. 1996); *In re Lykes Bros. S.S. Co., Inc.*, 233 B.R. 497, 517 (Bankr. M.D. Fla. 1997); Daniel Keating, *Bankruptcy Code § 1114: Congress' Empty Response to the Retiree Plight*, 67 Am. Bankr. L.J. 17, 41-42 (1993); discussion at pages 11-12 of the Initial Report. The contrary holding in *In re Farmland Industries, Inc.*, 294 B.R. 903 (Bankr. W.D. Mo. 2003), is distinguishable from the present case because in *Farmland* the debtors sought to terminate and modify benefits during the Chapter 11 case. In the present case, it is undisputed that the Debtors continued to make payments in accordance with the terms of the Retiree Medical Plan during the Chapter 11 case. Sterling Chemicals expressly reserved the right to modify or terminate the Retiree Medical Plan. Ms. Steege assumes in her supplemental opinion that § 5.05(f) of the APA did not amend the Retiree Medical Plan. If the provisions of § 5.05(f) of the APA were not incorporated into the Retiree Medical Plan by way of amendment, Sterling Chemicals' unilateral right to modify or terminate the Retiree Medical Plan remained unimpaired and enforceable. Thus, even though the Retiree Medical Plan was "assumed" by the Debtors under the Plan of Reorganization, Sterling Chemicals retained the right to modify or terminate the Retiree Medical Plan, as assumed, after it emerged from bankruptcy.

          (ii)     Section 5.05(f) did not create any "vested" rights or benefits in the Plaintiffs. This is so because, among other things, Plaintiffs' benefits remained subject to termination or modification under various contingencies, including at the option of Sterling Chemicals with Cytec's consent. *See Halliburton Company Benefits Committee v.*

Pepper Hamilton LLP
Attorneys at Law

Kerry E. Notestine, Esquire
Page 9
September 2, 2009

*Graves*, 463 F.3d 360 (Cir. 2006), *decision clarified on denial of rehearing*, 479 F.3d 360, 361-2 (5th Cir. 2007); *Reese v. CNH America*, 2009 WL 2213465, *4 (6th Cir., July 27, 2009).

           (iii)     The Plaintiffs, who were notified of the bankruptcy proceedings, could and should have objected to the Debtors' rejection motion. *See* the discussion at pages 12-15 of the Initial Report. *Cf. General Datacomm supra.* (in response to debtor's motion to reject a contract providing for retiree benefits under § 365 of the Code, former employees successfully objected to the motion on the grounds that the debtor was required to comply with § 1114 and could not obtain that relief under § 365); *Wapakoneta supra.* (single retiree successfully moved for his appointment as a "authorized representative" under § 1114 in order to preserve rights under a retiree benefit plan). Having failed to object to the Debtors' motion to reject the APA or otherwise sought relief under §1114 before the Bankruptcy Court, the Plaintiffs waived any rights that they may have held under §1114. *See In re Erie Forge & Steel, Inc.*, 418 F.3d 270, 276 (in action brought by former employees against bankrupt former employer, creditors, their union and a liquidating trustee challenging bankruptcy court's approval of a stipulation among the defendants that resolved the employer's application to modify retiree benefits, it was held that the plaintiffs were bound by the stipulation by reason of their failure during the bankruptcy case to seek the appointment of an "authorized representative" other than the union under §1114); *In re Ulmer*, 203 F.3d 828, *1 (5th Cir. 1999) (party who had notice of trustee's turnover motion but failed to object until after the motion was granted waived all objections); *In re Delphi Corp.*, 2009 WL 2482146, *31 (*Bankr. S.D. N.Y.*, July 30, 2009) (nondebtor parties to executory contracts who did not object were bound by order approving debtors' assumption and assignment of contracts).

      2.    Advice of Independent Bankruptcy Counsel

           With regard to the advice that "independent bankruptcy counsel with particular expertise in § 1114 of the Bankruptcy Code and § 1114 case law" would have given if consulted by the Employee Benefits Committee, it is my view that such counsel, if retained, would have provided the same analysis and conclusions as are set forth in the Initial Report and this Supplemental Report. Such counsel would have advised the Employee Benefits Committee that the Debtors fully complied with the requirements of the Bankruptcy Code in rejecting the APA and were not required to seek relief under § 1114 of the Code as a precondition to having the

**Pepper Hamilton LLP**
Attorneys at Law

Kerry E. Notestine, Esquire
Page 10
September 2, 2009

right to terminate or modify the Plaintiffs' benefits under the Retiree Medical Plan after the effective date of the Plan of Reorganization.

Sincerely,

Michael H. Reed

/usd

# EXHIBIT 2



BRACEWELL &GIULIANI

Texas
New York
Washington, DC
Connecticut
Dubai
Kazakhstan
London

Marcy E. Kurtz
Partner

713.221.1206 Office
713.221.2125 Fax

marcy.kurtz@bgllp.com

Bracewell & Giuliani LLP
711 Louisiana Street
Suite 2300
Houston, Texas
77002-2770

September 3, 2009

Mr. Kerry E. Notestine
Littler Mendelson, P.C.
1301 McKinney, P.C.
Suite 1900
Houston, Texas 77010

Re:     Supplemental Report of Michael H. Reed in *Robert E. Evans, et al. v. Sterling Chemicals, Inc., et al.*, C.A. No. H-07-625 (U.S.D.C., S.D. Tex. Houston Div.)

Dear Kerry:

I have read the supplemental report by Catherine Steege, dated August 7, 2009. I have also read the supplemental report of Michael H. Reed, dated September 2, 2009, which supplemental report analyzes and responds to Ms. Steege's supplemental report.

Having reviewed both supplemental reports and the case law cited in each, I concur with those opinions expressed in the supplemental report of Michael H. Reed, dated September 2, 2009, and if called upon to testify, I would adopt those opinions as my own.

Very truly yours,

Bracewell & Giuliani LLP

Marcy Kurtz

MEK:zak

# EXHIBIT 3

**Sud, Nitin**

| | |
|---|---|
| **From:** | Walt@roperfirm.com |
| **Sent:** | Thursday, August 13, 2009 12:11 PM |
| **To:** | Sud, Nitin; Notestine, Kerry E. |
| **Cc:** | R. Martin Weber; hkg@grwlawfirm.com; cboyd-nafstad@grwlawfirm.com; Sara@roperfirm.com |
| **Subject:** | RE: Agreement regarding Pretrial Deadlines in Sterling case |

That is fine. So, are we agreed on everything?

Walt Roper
**Law Offices of Walt D. Roper, P.C.**
3100 Monticello Avenue
Suite 500
Dallas, Texas 75205
972.755.2525
fax: 214.378.6670
walt@roperfirm.com

---

**From:** Sud, Nitin [mailto:NSud@littler.com]
**Sent:** Thursday, August 13, 2009 11:23 AM
**To:** Walt@roperfirm.com; Notestine, Kerry E.
**Cc:** R. Martin Weber; hkg@grwlawfirm.com; cboyd-nafstad@grwlawfirm.com; Sara@roperfirm.com
**Subject:** RE: Agreement regarding Pretrial Deadlines in Sterling case

Walt,

Just to clarify, regarding the expert witnesses, I'm assuming the August 14th deadline is the deadline for the plaintiffs to supplement and then the defendants will have 15 days to submit any supplementation.

Nitin

---

**From:** Walt@roperfirm.com [mailto:Walt@roperfirm.com]
**Sent:** Thursday, August 13, 2009 10:17 AM
**To:** Notestine, Kerry E.; Sud, Nitin
**Cc:** 'R. Martin Weber'; hkg@grwlawfirm.com; cboyd-nafstad@grwlawfirm.com; Walt@roperfirm.com;
Sara@roperfirm.com
**Subject:** Agreement regarding Pretrial Deadlines in Sterling case

Kerry,

This email is sent to confirm our mutual understanding and agreement that the deadline for filing our Pretrial Disclosures which must be made pursuant to Rule 26(a)(3) and Judge Hoyt's "Required Pretrial Materials" Rule (Section VIII) is September 4, 2009. This means that the Joint Pretrial Order, as well as each party's exhibit lists, witness lists, designations of testimony, proposed findings of fact and conclusions of law, and memorandum of law are due on September 4.

The one exception (to the extent it is an exception) is the supplementation related to the parties' expert witnesses pursuant to 26(a)(2) and 26(e)(2), which is due August 14, 2009.

Finally, since the trial of this case has been bifurcated, it is also our understanding that the pretrial disclosures and any expert supplementation deadlines related to the trial, if any, of the damage phase of this case are separate and apart from the deadlines that govern the trial that is set for September 14, 2009, and that this agreement does not address those deadlines.

Please confirm that I have accurately set forth our understandings and agreement regarding the pretrial deadlines.

Thank you.

Walt Roper
**Law Offices of Walt D. Roper, P.C.**
3100 Monticello Avenue
Suite 500
Dallas, Texas  75205
972.755.2525
fax: 214.378.6670
walt@roperfirm.com

----

To ensure compliance with requirements imposed by the IRS, we inform you that
any U.S. federal tax advice contained in this document (including any attachments)
is not intended or written to be used, and cannot be used, for the purpose of (i)
avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing
or recommending to another party any transaction or matter addressed herein.

This email may contain confidential and privileged material for the sole use of the
intended recipient(s).  Any review, use, distribution or disclosure by others is strictly
prohibited.  If you are not the intended recipient (or authorized to receive for the
recipient), please contact the sender by reply email and delete all copies of this
message.

To reply to our email administrator directly, send an email to postmaster@littler.com

Littler Mendelson, P.C.
http://www.littler.com